IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JAMES B. CANNON, on behalf of TINA STANFIELD CANNON, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 3:17-cv-546-SRW ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff James B. Cannon, on behalf of Tina Stanfield Cannon, commenced this action on August 11, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner partially denying Tina Stanfield Cannon's ("the claimant's") applications for supplemental security income benefits ("SSI"), and disability insurance benefits.[2] *See* Doc. 1; R. 22. On September 23, 2014, the claimant protectively filed applications for disability and SSI benefits, alleging disability as of March 16, 2014, due to lupus, high blood pressure, staph infection, ulcer, and heart disease. *See* Doc. 13 at 1; R. 11, 188–201, 222. On October 6, 2016, Administrative Law Judge Amy H. Naylor

---

[1] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[2] As the claimant's widower, plaintiff submitted a notice regarding substitution of party upon death of claimant on May 31, 2016. *See* R. 185.

("the ALJ") issued a partially adverse decision after holding a hearing on the claimant's applications.[3] *See* R. 11–22. The Appeals Council denied claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* R. 1-5.

In the instant appeal, the plaintiff asks the court to reverse the Commissioner's partially adverse decision and award benefits for the period from March 15, 2014 through September 29, 2015 or, in the alternative, to remand this cause to the Commissioner under sentence four of 42 U.S.C. § 405(g). *See* Docs. 1 at 3; 13 at 11. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c); *see also* Docs. 10, 11. For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be remanded for additional proceedings.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It

---

[3] The claimant was represented by counsel at the hearing before the ALJ held on April 28, 2016. *See* R. 43.

is "more than a scintilla, but less than a preponderance." *Id.* A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for SSI and disability benefits, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ADMINISTRATIVE HEARING

At the hearing before the ALJ held on April 28, 2016, the claimant was 50 years old. R. 44. She testified that her condition had worsened since she quit working in the first

quarter of 2014. R. 46. She constantly had cardiac issues, but they got worse in June of that year when she had to be rushed to the emergency room. R. 47.

At the time of the hearing, claimant lived only with her husband; her daughter and son had moved out. R. 47. The ALJ questioned the claimant about notations in medical records concerning her being a primary caregiver for her grandchildren. Although she used to watch the grandchildren if her daughter had to go out on occasion, she had not been driving them for quite a while. The claimant quit driving six to eight months prior to the hearing because she got dizzy and saw spots. R. 48. Her husband drove her to the hearing. R. 48. In the five to six months prior to the hearing, she felt like she was going to pass out all the time. R. 48.

Claimant has her GED. R. 48. Her past work included working as a cook in a convenience store deli. R. 49. She had to quit that job because she kept getting staph infections on her face, hands, and elsewhere, and she could not serve the public food like that. R. 49. Prior to that, she worked as an assembler putting rivets in plastic parts. R. 50.

Claimant testified that she was unable to work because she got shortness of breath, lost her balance, and had numbness and weakness in her legs. R. 50–51. She testified that she suffered from lupus, congestive heart failure, heart arrhythmia, and COPD. R. 51. She had been unable to be treated by a cardiologist because she had no insurance. R. 51.

At the time of the hearing, the only doctor she was seeing was Dr. Russell, who had treated the claimant her "whole life." R. 52. She saw him one to two times per month. R. 52. He instructed her to keep her feet propped up and rest. R. 52. She took medication for

her heart, lupus, pain, and blood pressure, but the medications caused her to feel weak and dizzy. R. 52–53.

She testified that she could walk ten to 15 minutes before needing to rest. R. 54. She could not stand long because she got dizzy and her legs went numb. R. 54. She was unable to sit for long before her back hurt and she would need to get up and move around. R. 54. She spent most of her day lying down with her feet propped up. R. 54. She denied grocery shopping lately, going to church, or going out with friends. R. 55. It had been over three years since she went camping or fishing. R. 57.

Within days of her stopping work in March 2014, she was seen at Community Medical Arts Center due to a skin abscess and involuntary weight loss. R. 60. She testified that she had to quit her job in March 2014 because she kept getting staph infections and missing a lot of work. R. 61. She was missing two to three times per month due to the staph infections. R. 61. Her boss could not understand that she could not serve the public covered with an infection. R. 61. She had had swollen feet since 2012 and they had gotten worse. R. 63. She elevated her feet 75 percent of the day because of the swelling. R. 63. According to the claimant, the combination of the staph infections and all her other medical problems, along with medication side effects, prevented her from being able to work. R. 64.

The ALJ took testimony from the VE, who identified the claimant's past work as cook helper and production assembler. R. 65. The ALJ posed two hypotheticals to the VE. R. 65–67. In response to the second hypothetical, the VE testified that an individual who had to miss two or more days from work per month would be unable to do the claimant's

past work or any other work existing in the national economy. R. 66–67. Less than two weeks after the hearing, the claimant died on May 8, 2016. (Doc. 13 at 1).

## ALJ's DECISION

In her decision, the ALJ found that the claimant suffered from the severe impairments of supraventricular tachycardia, atrial fibrillation, chronic obstructive pulmonary disease ("COPD"), systemic lupus erythematosus, congestive heart failure, and methicillin-resistant staphylococcus aureus ("MRSA"). *See* R. 14. The ALJ concluded that the claimant did not have an impairment or combination of impairments that met or medically equal a listed impairment. *See id*. As she must, the ALJ stated that she considered all of the claimant's impairments individually and collectively in determining the claimant's residual functional capacity ("RFC"). *See* R. 15.

The ALJ found that since March 16, 2014, the claimant had the RFC to perform the full range of sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a). *Id.* Under the regulations, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a)

At step four, the ALJ found that the claimant was unable to perform her past relevant work, which was performed at the medium and light exertional levels. *See* R. 20. The ALJ determined, however, that "[p]rior to September 29, 2015, based on a residual functional

capacity for the full range of sedentary work, [and] considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 201.21."[4] R. 21. Beginning on September 29, 2015, the claimant's age category changed to an individual closely approaching advanced age (age 50–54). *See id.*; *see also* 20 C.F.R. §§ 404.1563(d), 416.963(d). Accordingly, the ALJ concluded that a finding of "disabled' was reached by direct application of Medical-Vocational Rule 201.14. *Id.* Thus, the ALJ determined that the claimant was not disabled prior to September 29, 2015, but as of that date, the claimant became disabled through the date of the ALJ's decision. R. 21.

## ISSUE ON APPEAL

The plaintiff raises a single argument on appeal. Plaintiff contends that the ALJ erred in failing to afford adequate weight to the opinion of the claimant's treating physician, Melvin Russell, M.D. *See* Doc. 13 at 9–11. The Commissioner maintains that the ALJ did not err by discounting the opinion of Dr. Russell because substantial evidence supported the ALJ's finding that his opinion was due only partial weight. *See* Doc. 14 at 5–9. After careful consideration, the court finds that the plaintiff's argument warrants remand.

---

[4] "Medical–Vocational Rule" is a reference to one of the rules/categories found in the tables in 20 C.F.R. Part 404, Subpart P, Appendix 2, commonly referred to as "the grids," which indicates "whether an individual is or is not disabled" based on an individual's age, education, residual functional capacity and previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00.

# DISCUSSION

Plaintiff contends that the ALJ failed to attribute appropriate weight to the opinion of claimant's treating physician, Dr. Russell. *See* Doc. 13. The Commissioner responds that the ALJ is not obligated to accept a treating physician's opinion if the opinion is conclusory, it is not supported by the evidence, the evidence supports a contrary finding, or it is inconsistent with the physician's own records. *See* Doc. 14 at 5 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004)).

> Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a) (2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of a treating physician constitutes reversible error).

*Rudolph v. Berryhill*, 2018 WL 1527827, at *5 (M.D. Ala. 2018) (quoting *Albery v. Comm'r of Soc. Sec.*, 2012 WL 2589297, at *7 (M.D. Fla. June 7, 2012), *report and*

*recommendation adopted*, 2012 WL 2589267 (M.D. Fla. 2012), and citing *Winschel*, 631 F.3d at 1179)).

On September 30, 2015, Dr. Russell, claimant's treating doctor, completed a physical RFC questionnaire. *See* R. 424–26. He noted that the claimant was not a malingerer and that her impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation; that during a typical work day, the claimant's pain or other symptoms, including medication side effects, were severe enough to interfere with attention and concentration needed to perform even simple work tasks; that the claimant could only sit/stand for five minutes at a time before needing to change positions; that the claimant could sit/stand/walk for less than two hours during an eight-hour work day; that she could never twist, stoop, bend, crouch, squat, climb stairs, and climb ladders; that the claimant should elevate her legs with prolonged sitting; that the claimant would constantly experience symptoms and medication side effects severe enough to interfere with the attention and concentration necessary to complete simple work tasks; and that the claimant would be absent from work more than four days a month due to her numerous medical problems. *Id.*

It is undisputed that Dr. Russell was a long-time treating physician of claimant's who was familiar with her extensive medical history. *See* Doc. 13 at 9; Doc. 14 at 5; R. 19. The ALJ states the following regarding Dr. Russell's treating medical source assessment:

> The undersigned affords partial weight to the opinion of the M. D. Russell, MD. Dr. Russell is the claimant's treating physician and he is familiar with the claimant's medical history of COPD, heart valve problems, chronic heart failure, and lumbar radiculopathy. On September 30, 2015, Dr. Russell opined the claimant could rarely lift and carry less than 10 pounds

and never lift ten pounds or greater. Dr. Russell opined the claimant could sit/stand for only 5 minutes at a time before needing to change position. Dr. Russell opined the claimant could sit/stand/walk for less than two hours during an eight-hour workday. Dr. Russell opined the claimant could never twist, stoop, bend, crouch, squat, climb ladders, and climb stairs. Dr. Russell opined the claimant should elevate her legs with prolonged sitting. Dr. Russell opined the claimant would constantly experience symptoms and medication side effects severe enough to interfere with the attention and concentration necessary to complete simple work tasks. Dr. Russell opined that the claimant would have been absent more than four days a month. The undersigned credits Dr. Russell as a treating physician and notes that the claimant turned 50 by the date of this report. The undersigned finds that some of these limitations are consistent with the evidence, but not to the extent described. Dr. Russell's opinion is extremely limiting and the sedentary [RFC] provided seems more in line with the evidence during this period. Accordingly, the undersigned provides partial weigh to this opinion.

R. 19.

The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440) (internal quotation marks omitted). "Good cause" exists when:

- the treating physician's opinion was not bolstered by the evidence,
- the evidence supported a contrary finding; or
- the treating physician's opinion was conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). The Commissioner must specify what weight is given to a treating physician's opinion, and any reason for giving it no weight at all. *See MacGregor*, 786 F.2d at 1053 (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985), and *Wiggins v. Schweiker*, 679 F.2d 1387, 1389-90 (11th Cir. 1982)). Failure to do so is reversible error. *Id.* (citations omitted). Here, the ALJ gave Dr. Russell's opinion "partial

weight." However, "partial weight"[5] is not the required "substantial weight," and the decision fails to explain adequately the ALJ's basis for discounting the opinion, and fails to identify which opinions of Dr. Russell's were accepted and which were rejected. Thus, the court is left to guess at which of Dr. Russell's opinions were considered, and what was and was not included in the "partial" weight assigned to this long-time treating medical source's opinion evidence.

The only explanation provided by the ALJ is that "some of these limitations are consistent with the evidence, but not to the extent described. Dr. Russell's opinion is extremely limiting." R. 19. These statements fail to provide any explanation as to which parts of Dr. Russell's opinion evidence the ALJ rejected and why. The decision does not offer any explanation of how Dr. Russell's opinion was not bolstered by the evidence, was contrary to the evidence, or was inconsistent with his own records.

Rather, the ALJ makes the conclusory statement that a sedentary RFC is "more in line with the evidence" from this time frame. However, it is not clear whether the ALJ, in deciding that the claimant could perform the full range of sedentary work, considered certain medical conditions that would make sitting difficult. The decision further fails to address the claimant's need to miss work. Both of these issues were addressed by Dr. Russell's medical source assessment. Dr. Russell indicated that plaintiff would miss four days or more of work. Additionally, the claimant testified she had to stop working in March

---

[5] The ALJ does not explain what is meant by "partial weight" or how that assignment differs from "substantial weight." Also, the scope or definition of the term is not self-evident from the context of the ALJ's written decision, except that the ALJ appears to have rejected some of Dr. Russell's opinions, but it is unclear on which parts.

2014 due to her missing too many days because of staph infections. The VE testified that an individual of the claimant's age, education, and work experience who misses two or more days per month of work would be unable to do the claimant's past work or any other work existing in the national economy. *See* R. 66–67.

Dr. Russell stated that the claimant could only sit or stand for five minutes at a time before needing to change positions. The medical records from the relevant time period indicate that claimant suffered from infections that could cause her to miss work and make it difficult to engage with the public, as well as other medical issues that could limit her ability to sit for periods of time in a sedentary job.[6] *See, e.g.,* R. 310 (seen at East Alabama Medical Center on March 9, 2014 for swollen and painful abscess on her lip); R. 330 (seen in follow up by Dr. Russell on March 18, 2014 for recent MRSA infection, skin abscess of buttocks, lumbago, and recent involuntary weight loss); R. 327–28 (April 14 and May 8, 2014 visits for pain medication refill for low back pain and lumbar radiculopathy); R. 318 (July 1, 2014 emergency room visit because claimant was found lethargic, unresponsive, and on several pain medications and tranquilizers); R. 389 (on November 17, 2014, claimant had fever blisters on her lips and skin abscess of buttocks). The ALJ's failure to explain which portions of Dr. Russell's opinion evidence she gave "partial weight," and which portions she rejected, and her reasons for doing so, makes it impossible for the court to determine whether the ALJ considered Dr. Russell's medical records in their entirety or

---

[6] The VE testified that a sit/stand option was not available in the production assembler job as the claimant performed it. R. 67.

the proper legal standards were applied.[7] Indeed, the ALJ appears to have focused on the examination findings that supported her conclusion rather than considering the record as a whole. The ALJ's cursory treatment of this evidence leaves the court with insufficient explanation and evidence to support a finding of good cause for the assignment of less than substantial weight.

In her brief, the Commissioner posits that "[t]he ALJ here found Claimant disabled as of September 29, 2015, and essentially credited Dr. Russell's opinion that Claimant could not work as of that date, but discounted it as far as her ability to work before." Doc. 14 at 8. But the ALJ's decision does not itself provide such an explanation.

The Eleventh Circuit explained that, in considering medical opinions,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for [her] decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v.*

---

[7] The ALJ generally acknowledged the claimant's medical problems, noting that "[t]he claimant was treated at the Community Medical Arts Center from 2008 through 2015 for complaints of chronic pain, hypertension, heart issues, COPD, lupus, multiple abscesses, fever blisters, stomach issues, anxiety, and other complaints." R. 16. She stated that, "[p]hysical exam findings were generally unremarkable except for those areas related to the claimant's symptomatic complaints." *Id.* Dr. Russell's physical exam findings are consistent with her symptomatic complaints, a fact the ALJ seems to acknowledge, which further highlights why it was necessary for the ALJ to explain which of Dr. Russell's opinions she rejected and why.

*Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179. Thus, any post hoc explanation by the Commissioner in her brief cannot serve as a basis for the court to assume that the ALJ applied correct legal standards. The ALJ's written decision must demonstrate that she acted in accordance with the law.

"The Commissioner must clearly articulate her reasons for disregarding a treating physician's opinion, and the failure to do so is reversible error." *Garcia v. Berryhill*, 2017 WL 1227936, at *3 (M.D. Ala. Mar. 31, 2017) (citing *Lewis*, 125 F.3d at 1440 (citation omitted); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.")). The ALJ's written decision does not satisfy this legal standard. It has left the court in the dark as to whether the decision is in accordance with proper legal principles and based on substantial evidence. *See Coker v. Colvin*, 2016 WL 7159498, at *8 (M.D. Ala. Dec. 7, 2016) (remanding to the Commissioner because of the ALJ's lack of specificity in rejecting a treating physician's opinion evidence). A court cannot simply infer that proper legal standards were applied. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) ("The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (bracketed text in original); *Cornelius*, 936 F.2d at 1145–46 (the ALJ errs as a matter of law if the written decision lacks enough information for the court to review the ALJ's findings to ensure that proper legal standards were employed and

that the factual findings are based on substantial evidence). The court must conclude here that the ALJ's decision is not based on substantial evidence because there is insufficient information for the court to determine that the ALJ considered Dr. Russell's treating medical source opinion under the proper legal standards. Under these circumstances, the court must remand this matter for additional proceedings.

## CONCLUSION

Accordingly, the decision of the Commissioner will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so the Commissioner can conduct additional proceedings consistent with this opinion. On remand, the Commissioner is directed to articulate the weight attributed to each of Dr. Russell's opinions and the reasons therefor.

Done, on this the 13th day of March, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge